**IN THE UNITED STATES DISTRICT COURT
<u>FOR THE DISTRICT OF MARYLAND</u>**
*Southern Division*

|  |  |  |
|---|---|---|
|  | * |  |
| **LESTER FLETCHER** | * |  |
| *Plaintiff,* | * |  |
|  | * | **Case No.: 20-cv-3446-PWG** |
| **v.** | * |  |
|  | * |  |
| **DIDLAKE, INC.,** | * |  |
| *Defendant*. | * |  |
|  | * |  |

\* \* \* \* \* \* \* \* \* \* \* \* \*

**<u>MEMORANDUM OPINION</u>**

This is an Americans with Disabilities Act lawsuit brought by self-represented Plaintiff Lester Fletcher against his former employer, Didlake, Inc. On September 6, 2018, Didlake offered Mr. Fletcher an at-will position of employment. Am. Compl. 6, ECF No. 14 ("Compl."); Def.'s Mot. 2, ECF No. 9-1. His term of employment did not last long, however. After an unamicable separation, Mr. Fletcher filed a Retaliation and Disability claim with the EEOC via the D.C. Office of Human Rights, resulting in the EEOC issuing a right to sue letter on August 26, 2020. Compl. 5; EEOC Dismissal, ECF No. 1-10. He then filed this suit on November 24, 2020. Didlake filed a motion to dismiss on January 12, 2021 and, in response, I allowed Mr. Fletcher an opportunity to amend his complaint, ECF No. 11. He did so on February 16, 2021, though he apparently did not address the pleading deficiencies noted in the motion, *see* Compl. 1. Didlake subsequently renewed its original motion to dismiss, ECF No. 15. Mr. Fletcher then responded to the motion and Didlake replied, ECF Nos. 17, 18. The motion is ripe for review and because it is fully briefed,

1

a hearing is not necessary. Loc. R. 105.6 (D. Md. 2021). For the reasons that follow, the motion is GRANTED IN PART and DENIED IN PART.

As noted, Mr. Fletcher is proceeding without counsel. While Fed. R. Civ. P. 8(e) requires the Court to construe all pleadings so as to do justice, the Rules of Civil Procedure also have clear requirements as to the form and content of pleadings, the majority of which Mr. Fletcher has disregarded. His amended complaint does not contain a plain statement of his claims showing that he is entitled to relief, Fed. R. Civ. P. 8(a)(2), it fails to state each allegation simply, concisely, and directly, Fed. R. Civ. P. 8(d)(1), it fails to state separate claims in numbered paragraphs limited to a single set of circumstances, and fails to set out claims in separate counts, Fed. R. Civ. P. 10(b). Further, the complaint contains legal arguments and citations to statutory and case law, as well as argument instead of allegations. The sum of these shortcomings is to make it quite difficult to discern the exact nature of the claims that Mr. Fletcher is trying to plead, requiring the Court to do its best to discern the claims he has tried to plead, and analyze them in the face of the Defendant's motion to dismiss. With this in mind, the Court will construe as best it can the Plaintiff's claims, and address them below.

## Background

Didlake "is a non-profit corporation that offers employment opportunities to persons with significant disabilities." Def.'s Mot. 2. Mr. Fletcher alleges Didlake initially offered him a position as a Porter at the White House, which paid $17.50 per hour. Compl. 6, 10. That offer did not materialize; after months of delay between his initial offer and start date (due to a lengthy background check), Didlake could only offer Mr. Fletcher a position as a janitor at a lower wage, $13.83 per hour, and at a different location than the Porter position. *Id*. at 8–9. Instead of the White House, Mr. Fletcher alleged Didlake directed him to report to the Eisenhower Executive Office Building at 17th Street and Pennsylvania Avenue, NW in Washington, D.C. Despite his

apparent irritation about not receiving the Porter position, Mr. Fletcher began work as a janitor on March 4, 2019. *Id*. at 9–10.

As Didlake states, Mr. Fletcher's position was at-will and subject to a background check, (as one might hope for someone applying for a job at the White House) which Didlake notes is a lengthy process. Def.'s Mot 1, citing Ex. B to Compl., ECF No. 1-3. Mr. Fletcher started work on March 4, 2019 and his employment terminated upon his May 31, 2019 resignation. Def.'s Mot. 1–2. Didlake states, and the record reflects, that Mr. Fletcher had attendance problems during his employment, including arriving late 14 times. *Id*. (Citing Ex. G to Compl., ECF No. 1-7 (written attendance warming)). And, relevant to the ADA claim, it is undisputed that Mr. Fletcher suffers from fibromyalgia, a condition that limits his mobility. Ex. E to Compl, ECF No 1-5 (Letter from Dr. Matsumoto).[1]

As noted, the EEOC dismissed Mr. Fletcher's administrative claim against Didlake on August 26, 2020, Compl. 5, because it could not find any violation of the relevant statutes, Ex. J to Compl. 2, ECF No. 1-10. However, the dismissal order informed Mr. Fletcher that he would be permitted to file a claim in federal court based on the EEOC charge within 90 days of his receipt of the EEOC's notice. *Id*. Mr. Fletcher timely filed this suit on November 24, 2020.

## Standard of Review

Federal Rule of Civil Procedure 12(b)(6) provides for "the dismissal of a complaint if it fails to state a claim upon which relief can be granted." *Velencia v. Drezhlo*, Civil Action No. RDB-12-237, 2012 WL 6562764, at *4 (D. Md. Dec. 13, 2012). This rule's purpose "'is to test the sufficiency of a complaint and not to resolve contests surrounding the facts, the merits of a

---

[1] Didlake notes that nothing in its motion should be interpreted as an admission to the truth of any of Mr. Fletcher's allegations but it does not challenge Mr. Fletcher's status as a person with a disability for purposes of his claims. Def's Mot. 2, n.2.

claim, or the applicability of defenses.'" *Id.* (quoting *Presley v. City of Charlottesville*, 464 F.3d 480, 483 (4th Cir. 2006)). To that end, the Court bears in mind the requirements of Rule 8, *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009) when considering a motion to dismiss pursuant to Rule 12(b)(6). Specifically, a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2), moreover, it must be "a plausible claim for relief," as "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice," *Iqbal*, 556 U.S. at 678–79. *See Velencia*, 2012 WL 6562764, at *4 (discussing standard from *Iqbal* and *Twombly*). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 663.

When reviewing a motion to dismiss, "[t]he court may consider documents attached to the complaint, as well as documents attached to the motion to dismiss, if they are integral to the complaint and their authenticity is not disputed." *Sposato v. First Mariner Bank*, No. CCB–12–1569, 2013 WL 1308582, at *2 (D. Md. Mar. 28, 2013); *see also CACI Int'l v. St. Paul Fire & Marine Ins. Co.*, 566 F.3d 150, 154 (4th Cir. 2009). Here, Mr. Fletcher has attached a series of documents to his initial complaint that I find are integral to his claims, and Didlake has not challenged their authenticity.

Additionally, because Mr. Fletcher is proceeding without the assistance of counsel in this case, I am mindful of my responsibility to interpret his filings liberally, which I have done. *See e.g., United States v. Brown*, 797 Fed. App'x 85, 89 (4th Cir. 2019).

## Discussion

A. **ADA Discrimination**

   1) *Failure to accommodate*

Didlake argues that under the many theories of ADA liability asserted by Mr. Fletcher, his claims must fail. According to Didlake, he cannot state a claim of failure to accommodate because he has not alleged any facts to support the required elements that reasonable accommodations would allow him to perform the essential functions of the position, or that Didlake refused to make a reasonable accommodation. Def.'s Mot. 6 (citing *Rhoads v. FDIC*, 257 F.3d 373, 387 n.11 (4th Cir. 2001)).

The elements of an ADA failure to accommodate claim are:

> (1) that [the plaintiff] was an individual who had a disability within the meaning of the statute; (2) that the [employer] had notice of his disability; (3) that with reasonable accommodation [the plaintiff] could perform the essential functions of the position . . . ; and (4) that the [employer] refused to make such accommodations.

*Wilson v. Montgomery Cty. Bd. of Trustees*, No. PWG-17-2784, 2018 WL 4300498, at *8 (D. Md. Sept. 10, 2018); (citing *Rhoads* 257 F.3d at 387 n. 11 and *Works v. Colvin*, 519 F. App'x 176, 186 (4th Cir. 2013).

Mr. Fletcher alleges in his complaint that co-workers, to whom he refers to as John and Jane Doe and (at one point) Ms. LeVia, received accommodations for their disabilities, but that commensurate accommodations were not granted to him.[2] Compl. 24–25. Specifically, Mr. Fletcher alleges Mr. Doe has a disability and that Didlake accommodated Mr. Doe by giving him less arduous janitorial responsibilities such as wiping down trash cans and cleaning mirrors and

---

[2] To the extent Mr. Fletcher attempts to bring a discrimination claim by way of reference to a similarly situated comparator, that theory of discrimination must fail because he has not pleaded "that the comparator is similarly situated is all relevant respects." *Ryan v. McAleenan*, No. CV ELH-19-1968, 2020 WL 1663172, at *18 (D. Md. Apr. 3, 2020). The claim also must fail because Mr. Fletcher pleads that the comparators have disabilities, Compl. 24–25, and relying on a comparator from the same protected class is fatal to a discrimination claim. *Floyd v. U.S. Dep't of Homeland Sec.*, RDB-09-0735, 2009 WL 3614830, at *8 (D. Md. Oct. 27, 2009) (rejecting disparate treatment claim where plaintiff invoked a comparator of the same protected class) (citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 804 (1973)).

5

doorknobs. Compl. 24. Mr. Fletcher appears to draw a contrast between Mr. Doe and himself that, on multiple occasions, Mr. Fletcher was directed to vacuum and lift heavy objects, squarely contravening his doctor's advice to neither push nor pull with force exceeding 20 lbs. or to lift objects exceeding 20 lbs. Compl. 13; Pl.'s Opp. 4 (citing Ex. E to Compl.). Specifically, the complaint alleges Mr. Fletcher was told to vacuum "when there was a call-out," "was instructed to remove pallet[] boards with heavy objects on them weighing up to 100 pounds or more," and, was directed to lift heavy loads of old office supplies. Compl. 12. Mr. Fletcher's supervisor, Mrs. Ilene, directed him to perform these tasks. *Id*. As Mr. Fletcher alleges, these work tasks contravened the restrictions from his doctor. *Id*. at 13.

While Defendant's reply argues Mr. Fletcher has failed to plausibly allege facts on the third and fourth prongs an ADA failure to accommodate claim, Def.'s Reply 4, ECF No. 18, I find that—construing his pleading liberally and assuming the truth of all well-pleaded facts—he does plead sufficient information to survive a motion to dismiss. *United States v. Brown*, 797 Fed. App'x 85, 89 (4th Cir. 2019) (requiring pleadings from unrepresented litigants to be construed liberally); *Aziz v. Alcolac*, 658 F.3d 388, 390 (4th Cir. 2011) (The well-pleaded facts in a complaint are accepted as true.). Mr. Fletcher contends, and Didlake does not meaningfully refute, that co-workers with limitations could perform the role of a janitor. While Didlake argues Mr. Fletcher's complaint lacks an allegation that he could have performed his duties in a manner that complied with his doctor's orders, Def.'s Reply 5, that argument is better suited for summary judgment as it largely depends on the facts of Mr. Fletcher's employment, the limitations his doctor imposed, and Mr. Fletcher's own health conditions. At the motion to dismiss stage, Mr. Fletcher has sufficiently alleged that he had a disability of which Didlake was aware, Compl. 10; Ex. E to Compl, (Faxed Doctor's letter), that he could perform the essential functions of the position in a manner similar

to his co-workers, and that, by requiring him to complete tasks that were beyond his limitations, Didlake refused to make the necessary accommodations.

As best I can tell, Mr. Fletcher also alleges that Didlake denied him an interactive process to discuss reasonable accommodations, as required by the ADA. Compl. 17–18 ("Didlake never at any time sat with the Plaintiff to discuss accommodating his disability in the physical workplace."); Pl.'s Opp. 9 (citing *Didlake et al., v. Goodwin*, No. 0249-13-4, 2013 WL 2971810 (Va. Ct. App. June 18, 2013)). But the *Goodwin* case, a state court unpublished summary affirmance, is of little persuasive value here. It is unclear that the case involved an ADA claim and, from the very short opinion, it appears the lawsuit arose out of a workplace injury, which is not alleged here. However, failure to engage in the interactive process can be a violation of the ADA where an employee "communicates to his employer his disability and his desire for an accommodation for that disability." *Wilson v. Dollar General Corp.*, 717 F.3d 337, 346–47 (4th Cir. 2013).

Here, the facts pleaded by Mr. Fletcher show that prior to his employment, he informed Didlake of his physical limitations through a note from his doctor. Ex. E to Compl. But Didlake correctly argues that the complaint shows Didlake *did* in fact interact with Mr. Fletcher to come to a resolution of how he might be accommodated. Def.'s Reply 5–6 (citing Ex. D to Compl.). Further, Mr. Fletcher fails to allege that, after he started at Didlake, he made any request sufficient to put his employer on notice that he required different or additional accommodations. Had he done so, it may have been enough to require Didlake to engage in further interactive processes. But he did not, and therefore he has failed to state a claim under the ADA asserting a theory of liability based on Didlake's failure to engage in the interactive process.

Nevertheless, Mr. Fletcher has plausibly alleged a factual basis that Didlake repeatedly refused to accommodate his documented disabilities and that Mr. Fletcher could have performed the role for which he was hired in some capacity. On a general ADA failure to accommodate claim, that's enough. *See* Fed. R Civ. P. 8(a)(2); *Iqbal*, 556 U.S. at 663.

    *2) Hostile Work Environment*

Didlake argues Mr. Fletcher's claim of a hostile work environment under the ADA must fail because no reasonable person could find the conditions of his employment to be hostile, and because any alleged harassment that might form the basis of a hostile work environment claim is not alleged to have been connected to Mr. Fletcher's disability. Def.'s Mot. 6–7.

To state a claim for hostile work environment under the ADA, a plaintiff must allege that

> (1) he is a qualified individual with a disability; (2) he was subjected to unwelcome harassment; (3) the harassment was based on his disability; (4) the harassment was sufficiently severe or pervasive to alter a term, condition, or privilege of employment; and (5) some factual basis exists to impute liability for the harassment to the employer.

*Fox v. Gen. Motors Corp.,* 247 F.3d 169, 177 (4th Cir. 2001); *see also Wilson v. City of Gaithersburg*, 121 F. Supp. 3d 478, 483 (D. Md. 2015) ("[T]o plead that the environment is sufficiently severe or pervasive, Plaintiff must allege not only that he subjectively perceived his workplace environment as hostile, but also that a reasonable person would so perceive it, i.e., that it was objectively hostile.") (quoting *Fox*) (internal quotations omitted).

In Didlake's view, Mr. Fletcher has not plausibly alleged that the purported harassment was based on his disability or was sufficiently severe or pervasive to alter a term, condition, or privilege of his employment. Def.'s Mot. 7 (citing *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 23 (1993) ("[W]hether an environment is 'hostile' or 'abusive' can be determined only by looking at all the circumstances. These may include the frequency of the discriminatory conduct . . . and whether it unreasonably interfered with an employee's work performance.")).

Indeed, Mr. Fletcher's amended complaint is devoid of allegations he was subjected to unwelcome harassment based on his disability, or that what he perceived as harassment altered a term, condition, or privilege of his employment.  While the complaint alleges Mr. Fletcher encountered various issues, such as not being provided a uniform jacket (Compl. 18, 25) or being admonished not to discuss wages (Compl. 15), there is no allegation in the complaint that these instances were sufficiently severe as to plausibly alter a term, condition, or privilege of employment.  *Fox*, 247 F.3d at 178; *Wilson*, 121 F. Supp. 3d at 483; *Chappell v. Baltimore Cnty. Pub. Schs.*, Civ. A. No. ELH-18-3328, 2019 WL 1746697, at *5 (D. Md. Apr. 17, 2019) (dismissing ADA hostile work environment claim where plaintiff did not plead facts indicating harassment, "let alone harassment so severe as to alter terms or conditions of employment").  Nor has Ms. Fletcher alleged that the purported harassment was based on his disability.  Additionally, the other alleged basis for a hostile work environment claim, being disciplined for his absences, also is not sufficiently severe to alter a term of employment.  Compl. 14; *EEOC v. Cent. Wholesalers, Inc.*, 573 F.3d 167, 175 (4th Cir. 2009) (to meet hostile work claim element that harassment altered a term of employment, a plaintiff must show a reasonable person would perceive the environment as abusive or hostile).[3]

In *Tonin v. Baltimore City Police Dept.*, Judge Chasanow of this Court granted the Defendant's motion to dismiss a hostile work environment claim where a former Baltimore City police officer claimed the department created a hostile work environment following plaintiff's work-related car accident that limited her physical mobility.  *Tonin v. Baltimore City Police Dept.*,

---

[3]  Mr. Fletcher does allege that certain aspects of his employment were unbearable, such as moving heavy pallet boards and trash bags.  But these allegations are relevant to his ADA claim, not a hostile work environment claim, as he does not allege being directed to move heavy objects occurred as a result of his disability.

9

No. DKC 19-0323, 2020 WL 6746476, at *1 (D. Md. Nov. 17, 2020).  The Court noted the high bar for ADA hostile work environment claims and granted the motion to dismiss where plaintiff alleged reprimands, questioning about her medical condition, and transfers to undesirable posts amounted to a hostile environment.  *Id.* at *10–11.  In the Court's view, such actions were not sufficiently concentrated or severe.  *Id*. at *11.

So too here. The alleged harassment forming the basis of Mr. Fletcher's claim is not remotely tied to his disability and more importantly, he fails to plead that the harassment was either concentrated or sufficiently severe as to alter a condition of his employment.  *See id*. ("None of this conduct is sufficiently disruptive to alter the terms of employment for an objectively reasonable person, even if it was found to be subjectively hostile by Plaintiff because of her extreme stress, anxiety and depression.").  Mr. Fletcher's allegations that he did not receive a jacket, was admonished for discussing wages, and was disciplined for his absences do not rise to a level of objective hostility.  *Rock v. McHugh*, 819 F. Supp. 2d 456, 465, 471 (reprimands about leave and absences, among other disciplinary action, were insufficient to state ADA hostile work environment claim)

   *3) Failure to Hire*

To the extent Mr. Fletcher brings a discriminatory failure to hire claim, Didlake argues that he does not plead facts to support an inference that unlawful discrimination prevented him from obtaining the original Porter position that he was offered, pending a background check.  Def.'s Reply 2, ECF No. 18.  In this regard, Mr. Fletcher alleged that he "has the right to believe also that the applicant who replaced him for the Porter position did not have an accommodation request for the position and it was given to him because of him not needing any additional doctor restrictions."  Compl. 21.  Mr. Fletcher concedes that this "may be a big assumption" but suggests discovery

10

could clarify the allegation. *Id*. He later reiterates that he "believes that his disability is why he did not receive the porter position." Compl. 26.

In order to state a claim for failure to hire or promote, a plaintiff's well-pleaded facts must allege the following elements: (1) plaintiff is a member of a protected group; (2) plaintiff applied for the position at issue; (3) plaintiff possessed the required qualifications for the position; and (4) the employer rejected plaintiff for the position under circumstances from which unlawful discrimination could be inferred. *Alvarado v. Board of Trs. of Montgomery Cnty. Cmty. Coll.*, 928 F.2d 118, 121 (4th Cir. 1991). Here, Mr. Fletcher's allegations stem from his assumptions regarding the reasons why he did not get the porter position that he sought. But his subjective beliefs are insufficient for this claim to survive; Mr. Fletcher's *belief* in his claim does not amount to well pleaded *facts* sufficient to allege Didlake rejected his application for the Porter position for unlawful reasons. Therefore, the claim must be dismissed. Fed. R. Civ. P. 8(a)(2); *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (A plaintiff must establish "facial plausibility" by pleading "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."); *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) ("[A] Plaintiff's obligation to provide the 'grounds' of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do . . . . Factual allegations must be enough to raise a right to relief above the speculative level.") (citations and quotations omitted).

### B. Retaliation Claims

To establish a *prima facie* case of retaliation, a plaintiff must show that (1) he "engaged in a protected activity"; (2) his employer "acted adversely" against him; and (3) "the protected activity was causally connected to the adverse action." *Holland v. Washington Homes, Inc.*, 487

11

F.3d 208, 218 (4th Cir. 2007); *Strothers v. City of Laurel, Md.*, 895 F.3d 317, 327 (4th Cir. 2018) (clarifying that the third element is an "adverse action" rather than an "adverse employment action."); *see also Fox v. Gen. Motors Corp.*, 247 F.3d 169, 176 (4th Cir. 2001) (recognizing application of Title VII precedent in ADA cases).

Didlake argues that dismissal of any retaliation claim is warranted because Mr. Fletcher resigned from his job after approximately three months of employment, and therefore cannot show that Didlake took any adverse action against him. Def.'s Mot. 1. Thus, Didlake contends Mr. Fletcher has failed to make out a *prima facia* case of retaliation and argues that the claim lacks facial plausibility. Def.'s Mot. 4 (citing *Iqbal*, 556 U.S. at 677–78 (2009)). Specifically, in Didlake's view, Mr. Fletcher's claim fails to allege that he engaged in protected activity or that he was subject to any adverse action. All he alleges is that he received a single written warning, which Didlake argues is far from sufficient to state a claim because it is not a "materially adverse" action. Def.'s Mot. 5 (citing *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006) ("In our view, a plaintiff must show that a reasonable employee would have found the challenged action materially adverse, which in this context means it well might have dissuaded a reasonable worker from making or supporting a charge of discrimination.") (citation and internal quotations omitted)). Nor can Mr. Fletcher's resignation be considered materially adverse, according to Didlake. *Id.* (citing *Evans v. Davies Truckers, Inc.*, 769 F.2d 1012, 1014 (4th Cir. 1985) (finding voluntary resignation was fatal to a retaliation claim)).

Mr. Fletcher pleads that what actually happened here was Didlake constructively discharged him from his employment. Compl. 4 ("These acts lead [sic] to the Plaintiff being Constructively Discharged."); 19 ("On May 31, 2019, the plaintiff was constructively discharged"). It is well established that constructive discharge is a form of adverse employment action. *Wilson v.*

*Montgomery Cty. Bd. of Trustees*, No. PWG-17-2784, 2018 WL 4300498, at *8 (D. Md. Sept. 10, 2018). However, in order to survive a motion to dismiss on the basis of a constructive discharge, a plaintiff must allege facts to plausibly show that he engaged in a protected activity, that the employer was on notice of his protected activity, and that there was a causal connection between the protected activity and the adverse action. *See Tonin*, 2020 WL 6746476, at *5.

Mr. Fletcher fails to allege in the complaint that he engaged in protected activity or that Didlake took the requisite adverse action against him necessary to proceed on a retaliation claim. The complaint similarly is devoid of any allegation that a protected activity bore a causal connection to adverse action. Further, the only allegedly adverse actions—a written warning about attendance, Ex. G to Compl., and Mr. Fletcher's supposed constructive discharge, Compl. 4, 19— are legally insufficient to state a retaliation claim. First, Mr. Fletcher included the written warning with his complaint and does not dispute that he had attendance issues. But Didlake correctly states that a lone written warning is not materially adverse. Def.'s Mot. 5. To be materially adverse, an action by the employer must discourage a reasonable worker from engaging in protected activity. *Strothers v. City of Laurel, Md.*, 895 F.3d 317, 327 (4th Cir. 2018). Issuing Mr. Fletcher a written warning for being absent repeatedly over a period of less than two months, Ex. G to Compl., does not rise to that level. *Jeffers v. Thompson*, 264 F. Supp. 2d 314, 330 (D. Md. 2003) (an oral or written reprimand, without some actual injury, does not qualify).

Second, the complaint does not adequately plead facts to allege a constructive discharge. Constructive discharge is an objective inquiry and is assessed from a reasonable person's perspective. *See Williams v. Giant Food Inc.*, 370 F.3d 423, 434 (4th Cir. 2004). To substantiate a constructive discharge, a Plaintiff must allege intolerable working conditions. *Id.*; *Honor v. Booz-Allen Hamilton, Inc.*, 383 F.3d 180, 186–87 (4th Cir. 2004) (professional and personal

tensions did not amount to intolerable conditions); *Munday v. Waste Mgmt. of N. Am., Inc.*, 126 F.3d 239, 244 (4th Cir. 1997) ("Constructive discharge occurs when an employer deliberately makes an employee's working conditions intolerable and thereby forces him to quit his job.") (quotations and citations omitted).

Here, Mr. Fletcher has failed to allege that Didlake deliberately imposed duties beyond those of a janitor with the intent of making his work environment intolerable, and therefore his theory of constructive discharge—and, it follows, retaliation—must fail.

### C. Breach of Contract Claim[4]

Mr. Fletcher also appears to raise a claim of a breach of his purported employment contract. Specifically, Mr. Fletcher pleads Didlake offered him a position as a Porter and, due to a lengthy background check process that delayed his start of employment, ultimately placed him in a different, lower paying position as a janitor. Compl. 6–7, 11. As to this claim, Didlake cites the employment letter, attached as an exhibit to the complaint, upon which Mr. Fletcher bases his contract claim. Didlake notes that that letter explicitly states that it "should not be construed as an employment contract." Def.'s Mot. 3 (citing Ex. B to Compl.).

Mr. Fletcher's complaint acknowledges this disclaimer but addresses it only with the legal conclusion that, as a matter of law, it does not undermine his contract claim. Compl. 8 ("Though Didlake did insert in the employment contract agreement that this employment letter offer is not

---

[4] In Maryland, "while the law of the forum governs the remedy for breach of contract, the law of the place of contracting governs questions regarding the nature, validity and construction of a contract unless such law would violate a strong public policy of Maryland." *Guinness v. Ward*, 955 F.2d 875, 893 n.13 (4th Cir. 1992). Further, the Maryland Court of Appeals explained that the "place of contracting" is the place where the last act necessary for the contract's formation is performed. *Grain Dealers Mut. Ins. Co. v. Van Buskirk*, 215 A.2d 467 (Md. 1965). Here, it is unclear where the contract was formed, but whether it was formed in Maryland (Mr. Fletcher's home state), Virginia (Didlake's headquarters), or Washington, D.C. (job location), the law is the same.

14

to be construed [] as a contact . . . by law that is exactly what it is; a contract for employment with Didlake and they breached it."). It is well established that in order to form a contract, there must be a manifestation by the parties of an intent to form a contract. *Cnty. Comm'rs for Carroll Cnty v. Forty W. Builders, Inc.*, 941 A.2d 1181, 1209 (Md. Ct. Spec. App. 2008) (An essential element with respect to the formation of a contract is a manifestation of agreement or mutual assent by the parties to the terms thereof; in other words, to establish a contract the minds of the parties must be in agreement as to its terms.) (citation omitted); *Phillips v. Mazyck*, 643 S.E.2d 172, 175 (Va. 2007) ("Until the parties have a distinct intention common to both and without doubt or difference, there is a lack of mutual assent and, therefore, no contract.") (citation omitted); *Davis v. Winfield*, 664 A.2d 836, 838 (D.C. App. 1995) ("One of the essential elements for formation of a contract . . . is a manifestation of agreement or mutual assent by the parties to the terms thereof; in other words, to establish a contract the minds of the parties must be in agreement as to its terms.") (quoting *Klein v. Weiss*, 395 A.2d 126, 141 (Md. 1978)). Didlake's disclaimer renders implausible Mr. Fletcher's pleadings that the letter from Didlake offered him a job as a Porter, which he accepted, thereby forming an enforceable agreement that he would be hired as a Porter. Accordingly, any breach of contract claim, to the extent one is alleged, is dismissed.

### D. Motion to Seal and for Sanctions

Shortly after filing his complaint, Mr. Fletcher filed a motion to seal exhibits B, D, E, I, and J to his complaint because the exhibits contain either his own address or contact information of other individuals. ECF No. 5. The motion to seal is denied without prejudice because Mr. Fletcher failed to comply with Local Rule 105.11's requirements for sealing documents filed in the record: he must show "specific factual representations to justify the sealing" of the documents. Nor has he explained "why alternatives to sealing would not provide sufficient protection." *See Va. Dep't of State Police v. Wash. Post*, 386 F.3d 567, 576 (4th Cir. 2004). Accordingly, the

motion is denied without prejudice, but Mr. Fletcher may, if he wishes, file a motion that sets out adequate grounds for sealing within 21 days of the Court appointing him *pro bono* counsel (addressed below), and Defendant may file any opposition within 14 days of the motion being filed.

Additionally, Mr. Fletcher has moved for sanctions against Didlake for what he states is a frivolous motion. Because motions for sanctions are disfavored in this court, Loc. R. 105.8 (D. Md. 2021), and because the legal arguments contained within Didlake's motion are well-grounded in the law for the reasons stated above, Mr. Fletcher's motion is DENIED.

## **Conclusion**

For the foregoing reasons, Didlake's motion to dismiss, ECF No. 9, is granted in part and denied in part. Mr. Fletcher's claim of failure to accommodate may proceed; the other claims are dismissed without prejudice. *Weigel v. Maryland*, 950 F. Supp. 2d 811, 825–26 (D. Md. 2013). Considering ADA claims are significant and in light of the fact this case will proceed to discovery, I find it would be to the benefit of all entities involved—Mr. Fletcher, Didlake, and the Court—to appoint counsel in this case. Mr. Fletcher is proceeding *in forma pauperis*. ECF No. 4. A federal district court judge's power to appoint counsel under 28 U.S.C. § 1915(e)(1) is a discretionary one and may be considered where an indigent claimant presents exceptional circumstances. *See Cook v. Bounds*, 518 F.2d 779, 780 (4th Cir. 1975); *see also Branch v. Cole*, 686 F.2d 264, 266 (5th Cir. 1982). Here, particularly in light of Mr. Fletcher's amended complaint's shortcomings noted above, appointment of counsel is warranted. Accordingly, the Court will appoint *pro bono* counsel for Mr. Fletcher.

A separate order shall issue.

DATED this 5th day of August, 2021.

BY THE COURT:

_____/s/_____

Paul W. Grimm

United States District Judge